IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GROVER GEYER, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-1468 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) | Chief Judge Joy Flowers Conti Magistrate Judge Maureen P. Kelly |
| Defendant. | ) ) | Re: ECF Nos. 7 and 12 |

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

Plaintiff Grover Geyer ("Geyer") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.  (ECF Nos. 7 & 12).  For the reasons that follow, it is respectfully recommended that Geyer's motion for summary judgment be denied, that the Commissioner's motion for summary judgment be granted, and that the Commissioner's administrative decision be affirmed.

**II.  PROCEDURAL HISTORY**

Geyer protectively applied for DIB and SSI benefits on January 12, 2010, alleging that he had become "disabled" on March 14, 2007.  (R. at 135, 143, 165).  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on April 22, 2010.  (R. at 64, 69).

Geyer responded on May 26, 2010, by filing a timely request for an administrative hearing. (R. at 74-75). On March 10, 2011, a hearing was held in Latrobe, Pennsylvania, before Administrative Law Judge ("ALJ") Joanna Papazekos. (R. at 25). Geyer, who was represented by counsel, appeared and testified at the hearing. (R. at 29-54). Linda Dezack ("Dezack"), an impartial vocational expert, also testified at the hearing. (R. at 55-59). In a decision dated April 1, 2011, the ALJ determined that Geyer was not "disabled" within the meaning of the Act. (R. at 7-22).

On April 14, 2011, Geyer sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6). The Appeals Council denied the request for review on August 15, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Geyer commenced this action on October 10, 2012, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 2). Geyer and the Commissioner filed motions for summary judgment on January 8, 2013, and March 1, 2013, respectively. (ECF Nos. 7 & 12). Those motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings

2

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Chenery Corp., 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. THE DECISION OF THE ALJ

In his decision, the ALJ determined that Geyer had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 12). Geyer was found to be suffering from medial epicondylitis and ulnar impaction syndrome of the right upper extremity, which were deemed to be "severe" under the Commissioner's regulations. (R. at 13); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Although Geyer had various leg, back, hip, vision and hearing impairments, they were deemed to be "non-severe." (R. at 13-15). The ALJ concluded that Geyer's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Geyer had the "residual functional capacity"[1] to perform the full range of "light"[2] work. (R. at 15).

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is

5

Geyer had "past relevant work"[3] experience as a carpenter and landscaper. (R. at 55-56). Dezack classified those jobs as "heavy"[4] positions performed by Geyer at the "medium"[5] to "very heavy"[6] levels of exertion. (R. at 55). Since Geyer was deemed to be capable of performing only "light" work, it was determined that he could not return to his past relevant work. (R. at 20-21).

Geyer was born on September 26, 1960, making him forty-six years old on his alleged onset date and fifty years old on the date of the ALJ's decision. (R. at 38). On his alleged onset date, Geyer was classified as a "younger person" under the Commissioner's regulations.[7] 20 C.F.R. §§ 404.1563(c), 416.963(c). He became a "[p]erson closely approaching advanced age" on September 26, 2010, when he reached the age of fifty. 20 C.F.R. §§ 404.1563(d), 416.963(d). Geyer had a high school education and an ability to communicate in English. (R. at 38, 168, 170); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual

---

used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[7] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

functional capacity and vocational assessments, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rule 202.21.[8]  (R. at 21).

V. **DISCUSSION**

Geyer was born with scoliosis.  (R. at 31).  He has a history of trauma to his back and hips.  (R. at 31, 247).  During the 1980's, he underwent surgery on his left knee to repair injuries that he had sustained while playing football.  (R. at 247).  Geyer is right-handed.  (R. at 160).  On April 15, 1996, he sustained a work-related injury to his right elbow.  (R. at 160).  Surgery was performed on February 2, 1998, to repair displaced muscles and tendons in his right arm.  (R. at 160).

During the spring of 2007, Geyer was working in Maryland.  (R. at 30).  On March 14, 2007, his feet fell through a ceiling at his work site.  (R. at 31, 127).  Geyer injured his right arm while catching himself with his armpits.  (R. at 31).  He started a physical therapy program on April 10, 2007.  (R. at 208).  Geyer was examined by Dr. Matthew H. Zornitzer, an orthopedic specialist, on May 2, 2007.  (R. at 221-224).  A magnetic resonance imaging ("MRI") scan of Geyer's right elbow showed no fractures or dislocations.  (R. at 222).  Dr. Zornitzer instructed Geyer to remain on "light duty at work."  (R. at 222, 224).  Two months later, Geyer was advised to continue with his "conservative treatment."  (R. at 219).

Although Geyer's symptoms improved somewhat with physical therapy, he continued to experience tightness and pain in his right wrist.  (R. at 217).  Dr. Zornitzer referred Geyer to Dr. Stacey Berner for further evaluation.  (R. at 217-218).  Dr. Berner recommended that a corticosteroid injection be administered to Geyer's right medial epicondyle, and that he undergo a right wrist arthroscopy with arthroscopic debridement.  (R. at 214).  The procedures were

---

[8] The Commissioner can rely on the Medical-Vocational Rules "to determine issues that do not require case-by-case consideration."  Heckler v. Campbell, 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

performed by Dr. Berner on March 27, 2008. (R. at 209-210). After a follow-up examination on April 7, 2008, Dr. Berner instructed Geyer to return to her office in four weeks in order to "address his return to work." (R. at 213). On May 7, 2008, Dr. Berner reported that Geyer was "doing quite well," and that he had "excellent range of motion and no tenderness" in his right arm. (R. at 212). Geyer was cleared to return to work on May 14, 2008. (R. at 212). Shortly thereafter, he sought chiropractic treatment from Dr. David P. Shields. (R. at 230). Although he continued to see Dr. Shields, Geyer did not seek or receive conventional medical care on a regular basis. (R. at 43, 46).

Maryland's Workers' Compensation Commission awarded compensation to Geyer for temporary periods of "total disability" following his 2007 injury and 2008 surgery. (R. at 126-127). Geyer also received "permanent partial disability" payments for injuries to his right arm. (R. at 127). It was determined that Geyer's ability to use his right arm had been impaired by thirty-five percent. (R. at 127). The impairment was attributed to a combination of "pre-existing conditions" and injuries caused by the March 14, 2007, incident. (R. at 127).

Geyer worked as a landscaper during the summer and fall of 2008. (R. at 44). He stopped working on November 30, 2008, because his duties had been "seasonal." (R. at 170). At the hearing, Geyer described his landscaping duties as "full-time" work activity. (R. at 44). He testified that he had been laid off and never called back. (R. at 44). Geyer further stated that his landscaping activities had left him "hurting so bad[ly]" that he had decided to apply for Social Security disability benefits. (R. at 44).

On April 7, 2010, Dr. Muna Jabbour performed a consultative physical examination of Geyer in connection with his applications for DIB and SSI benefits. (R. at 247-256). After completing the examination, Dr. Jabbour reported that Geyer could lift or carry objects weighing

8

two to three pounds on only an occasional basis. (R. at 250). Dr. Jabbour indicated that Geyer could stand or walk for only one hour, and sit for only four to five hours, during the course of an eight-hour workday. (R. at 250). Geyer's pushing and pulling abilities were deemed to be limited in both his upper and lower extremities. (R. at 250). Additional limitations were identified with respect to his handling, fingering and seeing abilities. (R. at 251). Dr. Jabbour asserted that Geyer was limited to only occasional balancing, and that he could never engage in other postural activities. (R. at 251). In addition, Dr. Jabbour suggested that Geyer needed to avoid moving machinery. (R. at 251).

Dr. Frank S. Bryan, a non-examining medical consultant, opined on April 16, 2010, that Geyer was physically capable of engaging in an unrestricted range of "light" work activities. (R. at 262-273). Describing the report of the consultative examination as "an overestimate of the severity of the claimant's functional restrictions," Dr. Bryan stated that Dr. Jabbour had "relied heavily on the subjective report of symptoms and limitations provided by the claimant." (R. at 273). Geyer's subjective complaints were deemed to be only partially credible. (R. at 273).

In response to questions posed by the ALJ and Geyer's attorney, Dezack, the vocational expert, testified that an individual with the limitations described in Dr. Jabbour's examination report would not be able to maintain a full-time job existing in the national economy. (R. at 56, 59). The ALJ rejected Dr. Jabbour's opinion on the ground that it was "entirely inconsistent with the other evidence in the record." (R. at 20). She observed that Dr. Bryan had found Geyer to be capable of performing "the full range of work at the light exertional level" with no non-exertional limitations. (R. at 19). In addition, the ALJ noted that Dr. Zornitzer and Dr. Berner had cleared Geyer to return to work after his March 2007 injury and March 2008 surgery. (R. at 19).

Geyer contends that an inconsistency exists between the ALJ's reliance on his return to work during the summer of 2008 and her determination that he could not return to his past relevant work. (ECF No. 8 at 10). That argument is unavailing. Geyer testified that he had performed "full-time" work as a landscaper during the summer and fall of 2008. (R. at 44). At the first step of the sequential evaluation process, the ALJ gave Geyer "the benefit of every conceivable doubt" in determining that he had not engaged in substantial gainful activity during the relevant period of time. (R. at 12). Dezack testified that Geyer had performed his landscaping duties at the "medium" level of exertion. (R. at 55). Geyer lost his landscaping job on November 30, 2008, when he was laid off. (R. at 44, 170). When questioned by the ALJ about the layoff, Geyer stated that his landscaping work had left him "hurting so bad[ly]" that he had decided to apply for DIB and SSI benefits. (R. at 44). The ALJ ultimately adopted Dr. Bryan's assessment in determining that Geyer could perform only "light" work. (R. at 19). Since Geyer had previously performed "medium" work, Dr. Bryan's opinion was consistent with the ALJ's finding that Geyer could not return to his past relevant work. (R. at 21). That opinion was also consistent with Geyer's testimony, which suggested that pain would compromise his ability to work as a landscaper. (R. at 44).

The ALJ was not required to adopt Dr. Jabbour's examination findings. Where a conflict in the evidence exists, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." Diaz v. Commissioner of Social Security, 577 F.3d 500, 505 (3d Cir. 2009). Under the Commissioner's regulations, an assessment provided by an examining physician is ordinarily entitled to more weight than an assessment supplied by a non-examining consultant. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Nonetheless, the regulations also recognize that treating physicians are generally more knowledgeable about a claimant's

impairments than a one-time consultative examiner. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even opinions expressed by treating physicians do not bind the Commissioner on the issue of a claimant's residual functional capacity. Brown v. Astrue, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). In this case, treating orthopedic specialists cleared Geyer to return to work after his injury and surgery. (R. at 212, 222, 224). The limitations described in Dr. Jabbour's examination report were sufficiently extreme to preclude an individual from engaging in any kind of substantial gainful activity. (R. at 56). Given that two treating specialists had cleared Geyer to work, the ALJ was not required to credit Dr. Jabbour's examination findings. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999)(recognizing that the probative force of a medical report must be ascertained by reference to the entire record). That is especially true in light of the fact that Geyer *actually worked* during the contested period of time. Even work activity that does not constitute substantial gainful activity may be probative of a claimant's ability to perform the duties of a full-time job. 20 C.F.R. §§ 404.1571, 416.971.

Since Geyer was forty-six years old on his alleged onset date, the ALJ treated him as a "younger individual." (R. at 21). Geyer correctly points out that he became a "[p]erson closely approaching advanced age" six months before the date of the ALJ's decision. (ECF No. 8 at 10). The ALJ did not acknowledge this fact. (R. at 21). Geyer asserts that, under Medical-Vocational Rules 201.12 and 201.14, he was "disabled" as of his fiftieth birthday. (ECF No. 8 at 10). Those rules apply only when a claimant is limited to "sedentary" work.[9] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rules 201.12 and 201.14. On the basis of the existing record, however, it was permissible for the ALJ to find Geyer to be capable of performing "light" work.

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

11

Having done so, the ALJ denied Geyer's claims pursuant to Medical-Vocational Rule 202.21. (R. at 21). Had the ALJ properly considered the change in Geyer's age category, Medical-Vocational Rule 202.14 would have still directed a finding of non-disability. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2, Rule 202.14. Given that the ALJ's oversight did not affect the disposition of Geyer's claims, it provides no basis for setting her decision aside. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)(declining to order a remand that "would not affect the outcome of the case").

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden can be satisfied by reference to the Medical-Vocational Rules when the claimant's residual functional capacity is shared by a large class of individuals. Heckler v. Campbell, 461 U.S. 458, 467-470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Where the claimant has a unique combination of functional limitations, the Commissioner can satisfy her burden only by establishing the existence of jobs in the national economy that could be performed by an individual with the claimant's specific abilities and limitations. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000). The testimony of a vocational expert is typically used to establish the existence of such jobs. Rutherford, 399 F.3d at 551. A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not conveyed to the vocational expert, there is a danger that he or she

12

will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. Ramirez v. Barnhart, 372 F.3d 546, 552-555 (3d Cir. 2004).

At the hearing, the ALJ asked Dezack, the vocational expert, whether "light" jobs existed for an individual who could sit or stand for no more than four hours in a given workday, for a combined total of eight hours. (R. at 57). Dezack testified that such an individual could "conceivably" work as a survey worker, traffic checker or silver wrapper. (R. at 57-58). Geyer maintains that Dezack's testimony was inconsistent with Social Security Ruling 83-10. (ECF No. 8 at 12). The merits of that argument need not be considered, since the relevant portion of Dezack's testimony was never relied upon by the ALJ. Geyer's applications for benefits were denied pursuant to Medical-Vocational Rule 202.21. (R. at 21). The existence of jobs in the national economy for individuals who can perform an unrestricted range of "light" work is not an issue requiring "case-by-case consideration." Campbell, 461 U.S. at 467. The portions of Dezack's testimony discussing the jobs available (or unavailable) to individuals other than Geyer are inconsequential. Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987).

A claimant's subjective complaints must be given "serious consideration" whenever the record establishes the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms described in the claimant's testimony. Mason v. Shalala, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Geyer testified that he sometimes experienced pain or discomfort while sitting, standing or walking. (R. at 31-41). This testimony was found to be lacking in credibility to the extent that it was inconsistent with the ALJ's residual functional capacity assessment. (R. at 16). Geyer argues that the ALJ erred in dismissing his testimony. (ECF No. 8 at 11).

Although the ALJ was required to carefully consider Geyer's subjective complaints, she was not required to credit them in every respect. Chandler v. Commissioner of Social Security, 667 F.3d 356, 363 (3d Cir. 2011). Furthermore, the mere fact that Geyer may have experienced some degree of pain during the relevant period of time does not necessarily mean that he was incapable of performing "light" work. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). Geyer's treating orthopedic specialists cleared him to work in May 2007 and May 2008. (R. at 212, 222, 224). Geyer performed "medium" work during the summer and fall of 2008. (R. at 44, 55). He stopped working on November 30, 2008, only because his work was "seasonal" in nature. (R. at 170). Aside from the chiropractic treatment provided by Dr. Shields, Geyer sought no medical treatment for his injuries between his layoff and the consultative physical examination performed by Dr. Jabbour. (R. at 43, 46). With no intervening evidence of a deterioration in Geyer's condition, the ALJ was not required to accept Dr. Jabbour's assertion that Geyer was suddenly incapacitated by injuries that had not previously stopped him from working. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). After reviewing all of the documentary evidence, Dr. Bryan opined that Geyer could engage in an unrestricted range of "light" work activities. (R. at 262-273). The ALJ was entitled to rely on Dr. Bryan's assessment in determining Geyer's residual functional capacity. Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986).

## VI. Conclusion

The Commissioner's decision denying Geyer's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, it is respectfully recommended that Geyer's motion for summary judgment (ECF No. 7) be denied, that the Commissioner's motion for summary judgment (ECF No. 12) be granted, and that the

Commissioner's "final decision" be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 (3d Cir. 2011).

BY THE COURT:

_____
Maureen P. Kelly
United States Magistrate Judge

cc: All counsel of record